IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| WESTERN NATIONAL MUTUAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>RAINBOW RANCH HOLDINGS, LLC d/b/a/ RAINBOW RANCH, Scott Nelson, Catharine Hudgens, individually and as personal representative for the Estate of Lew Hudgens,<br><br>Defendants. | Cause No. CV-23-05-BU-BMM<br><br>ORDER |

## INTRODUCTION

Western National Mutual Insurance Company ("Western National") filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (Doc. 22.) Western National seeks a declaration that the state court action against its insureds, Rainbow Ranch Holdings, LLC ("Rainbow Ranch") and Scott Nelson ("Nelson"), alleges only one occurrence. (*Id.* at 1.) Western National also seeks a declaration that Catharine Hudgens's ("Hudgens") counterclaims be dismissed or stayed. (*Id.* at 2.) Rainbow Ranch and Nelson have filed a Cross Motion to Dismiss or for a Stay, or alternatively, Cross Motion for Judgment on the Pleadings. (Doc. 28.)

1

## BACKGROUND

Western National issued a commercial general liability ("CGL") policy and an umbrella policy to Rainbow Ranch for the period from November 11, 2020, to November 11, 2021. (Doc. 17, ¶¶ 11–12.) The CGL policy provided limits of $1 million per occurrence with a medical expense limit of $10,000 per person. (*Id.*, ¶ 11.) The umbrella policy provided limits of $5 million. (*Id.*, ¶ 12.)

Rainbow Ranch operates a hotel in Gallatin County, Montana where Hudgens and her husband stayed in January of 2021. (Doc. 23 at 12.) Hudgens and her husband experienced carbon monoxide exposure in their room. (Doc. 29 at 7.) Hudgens suffered injuries and her husband died from the exposure. (*Id.*) Hudgens sued Rainbow Ranch and its manager, Nelson, in state court. (*See Catharine Hudgens, individually and as personal representative for the Estate of Lew Hudgens v. Hussey Plumbing of Big Sky, Inc., et al.*, Cause No. DV 21-263A ("Underlying Litigation"); *see also* Doc. 1-1.) Western National has tendered the undisputed policy limits of $6,020,000. (Doc. 32 at 11.) This amount represents the sum of the $1 million per occurrence limit under the CGL policy, the $5 million limit under the umbrella policy, and $20,000 in medical payments coverage.

## STANDARD OF REVIEW

Judgment on the Pleadings

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move for judgment on the pleadings. The Court applies the same standard to a Rule 12(c)

motion as it does to a Rule 12(b)(6) motion. *Clements v. Comprehensive Sec. Servs.*, No. CV-19-45-BU-BMM, 2020 U.S. Dist. LEXIS 217980 (D. Mont. Nov. 5, 2020). Judgment on the pleadings proves appropriate when the moving party establishes that no genuine issues of material fact exist and that they are entitled to judgment as a matter of law. *General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989). The Court must accept all allegations of fact by the nonmoving party as true. *Austad v. United States*, 386 F.2d 147, 149 (9th Cir. 1967).

Motion to Dismiss

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to seek dismissal for lack of subject matter jurisdiction. "Whether a claim is ripe for adjudication goes to a court's subject matter jurisdiction under the case or controversy clause of article III of the federal Constitution." *St. Clair v. Chico*, 880 F.2d 199, 201 (9th Cir. 1989). A court lacks subject matter jurisdiction over unripe claims because such claims fail to meet the case or controversy requirement. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010). The party arguing that a court has subject matter jurisdiction bears the burden of proof. *Rattlesnake Coal'n v. U.S. EPA*, 509 F.3d 1095, 1102 n. 1 (9th Cir. 2007).

Motion to Stay Proceedings

A district court may stay or dismiss an action for declaratory judgment at its discretion. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288, 115 S. Ct. 2137, 2143, 132

L. Ed. 2d 214 (1995). Courts deciding whether to issue a stay should consider how a stay will affect the interests of the parties. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). The Court must weigh the following factors: (1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *Id.* (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)).

## DISCUSSION

Western National moved for judgment on the pleadings on the issue of the number of occurrences and on Hudgens's counterclaim. (Doc. 22 at 4–5.) Rainbow Ranch argues that the Court should dismiss this action either because it is unripe or because the Court should exercise its discretion to decline jurisdiction over the declaratory judgment action. Rainbow Ranch argues in the alternative that the Court should stay the action until resolution of the Underlying Litigation. Rainbow Ranch further argues that the Underlying Litigation alleges multiple occurrences.

### I. Whether the Court should decide this matter on the merits

#### a. Whether this case presents a justiciable controversy

Rainbow Ranch argues that a jury first must decide whether liability exists, including which, if any, of Rainbow Ranch's actions caused Hudgens's injuries and

her husband's death. Rainbow Ranch further asserts that considering whether policy limits exceed $6 million involves a hypothetical and academic practice because it remains unknown whether a jury would reach a verdict over $6 million.

Montana law sets forth a three-element test for determining whether a justiciable controversy exists:

> 1) the parties must have existing and genuine, as distinguished from theoretical, rights or interests; (2) the controversy must be one upon which the court's judgment may effectively operate, as distinguished from an argument invoking a purely political, philosophical, or academic conclusion; and (3) the court's judicial determination must be able to effect a final judgment in law or decree upon the rights, status or legal relationships of the real parties in interest in the controversy.

*Mid Continent Cas. Co. v. Engelke*, CV 17-41-BLG-SPW, 2017 U.S. Dist. LEXIS 181196, at *5 (D. Mont. Oct. 31, 2017); *see also Northfield Ins. Co. v. Mont. Ass'n of Counties*, 10 P.3d 813, 816 (Mont. 2000). The Montana Supreme Court consistently has applied the justiciable controversy test and determined that declaratory judgment actions regarding an insurer's duty to indemnify remain unripe until resolution of the insured's liability. "It simply is not appropriate to determine whether the conduct of the insureds in the present case falls within the exclusions of the Policy prior to a determination or stipulation as to the underlying facts." *Northfield Ins. Co.*, 10 P.3d at 818.

Northfield and Lloyd were assurance companies for the Montana Association of Counties's self-insurance fund in *Northfield Ins. Co.* 10 P.3d at 815. Northfield

and Lloyd sought a declaratory judgment that they owed no duty to indemnify where the underlying suit alleged sexual abuse and intentional acts, which were excluded by the insurance policy. *Id.* at 818–819. The Montana Supreme Court noted that the Montana Association of Counties had not sought indemnification or exhausted its self-insurance funds. *Id.* at 817. The Montana Supreme Court recognized that the duty to indemnify depended on various events including a finding of liability, exhaustion of self-insurance funds, and a request for indemnification. *Id.* at 817. The Montana Supreme Court recognized that any opinion rendered would prove advisory unless and until those events occurred. *Id.*

The Montana Supreme Court distinguished *Northfield Ins. Co.* from its decision in *Ridley v. Guaranty Nat'l Ins. Co.* just a few years earlier. 951 P.2d 987 (Mont. 1997). In *Ridley*, an injured motorist sought a declaratory judgment that Montana's Unfair Trade Practices Act (UTPA) required a tortfeasor's insurer to pay the injured party's medical expenses where liability proved reasonably clear. *Id.* at 989. The insurer argued that no justiciable controversy existed because resolution of the underlying case had not occurred. *Id.* at 990. The Montana Supreme Court recognized that issues regarding causation and the extent of the insurer's liability remained outstanding. *Id.* at 991. The Montana Supreme Court determined, however, that a justiciable controversy existed "because a judgment would determine the respective rights and obligations of the parties under the UTPA."

6

*Miller v. State Farm Mut. Auto. Ins. Co.*, 155 P.3d 1278, 1281 (citing *Ridley*, 951 P.2d at 991).

The first prong of the justiciable controversy test requires that the parties possess "existing and genuine, as distinguished from theoretical, rights or interests." *Northfield Ins. Co.*, 10 P.3d at 816. Western National correctly notes that it has a duty to pay policy limits under the UTPA where the claimant's reasonably provable damages exceed policy limits. "[A]n insurance company may be found to have engaged in bad faith if it refuses to tender the policy limit payout to an injured party when it is reasonably clear his or her damages far exceed that amount." *High Country Paving, Inc. v. United Fire & Cas. Co.*, 454 P.3d 1210, 1215 (Mont. 2019). Western National has tendered the undisputed $6 million policy limits to Hudgens. Whether the alleged tort involved one "occurrence" or multiple ones will determine whether remaining coverage exists that Western National must pay. This declaratory action presents an issue regarding the parties' rights and duties under Montana law.

The Ninth Circuit has addressed the justiciability of a declaratory judgment action seeking a determination of policy limits. *Eureka Fed. Sav. & Loan Assoc. v. American Cas. Co.*, 873 F.2d 229, 230–31 (9th Cir. 1989). In *Eureka Fed. Sav. & Loan Assoc.*, the plaintiff had claimed damages in an underlying case from five different corporate officers. *Id.* at 231. The policy provided policy limits of $20 million per loss. *Id.* The insurer refused to settle the claims for $20 million against

7

some of the officers as they believed it would exhaust limits and violate their duties to the other officers. *Id.* at 231–232. The Ninth Circuit recognized that California law, like Montana law, required the insurer to make a good faith effort to settle within policy limits. *Id.* at 231. The insurer could not make a good faith effort to settle within policy limits "without a resolution . . . of the limits of liability coverage." *Id.* at 232.

This case more closely resembles *Ridley* and *Eureka Fed. Sav. & Loan Assoc.* than *Northfield Ins. Co.* Western National does not seek a determination about its duty to indemnify Rainbow Ranch. Indemnification has been sought and insurance coverage already has been tendered. Western National acknowledges its duty under the UTPA to tender policy limits to Hudgens if liability proves reasonably clear and it proves reasonably clear that her damages exceed policy limits. Western National has tendered the full limits of the umbrella coverage and medical payments coverage based on its evaluation of its insured's liability and Hudgens's damages. Western National has tendered what it believes to be the $1 million policy limit under the CGL policy.

Western National needs to know whether the CGL policy provides additional coverage to satisfy its good faith obligations under the UTPA. The Court's judgment on the number of occurrences does not invite mere speculation or theoretical conclusions like those invited by the action in *Northfield Ins. Co.* The Court's

judgment on the number of occurrences instead will "effectively operate" as a determination of the parties' rights and duties under the UTPA. *Ridley*, 951 P.2d at 991.

The last prong of the justiciable controversy test requires that the Court's judgement affect "a final judgment in law or decree upon the rights, status or legal relationships of the real parties in interest in the controversy." *Engelke*, 2017 U.S. Dist. LEXIS 181196, at *5. A judicial determination on the number of occurrences alleged in the Underlying Litigation will determine the CGL policy's limit. A determination on policy limits effectively serves as a judgment on whether Western National's policy limits have been exhausted and the UTPA has been satisfied.

This case presents a justiciable controversy. Western National needs to know the available policy limits to satisfy its duties to Rainbow Ranch, Nelson, and Hudgens under the UTPA. Western National needs the Court to construe the policy language on "occurrence" to determine the appropriate policy limits.

### b. Whether the Court should decline to exercise jurisdiction over this declaratory judgment action

Rainbow Ranch and Nelson argue that the Court should exercise its discretion to decline jurisdiction over this matter. Rainbow Ranch contends that "the court should consider, among other factors, whether the declaratory action will settle all aspects of the controversy, and whether the use of a declaratory action will result in

9

entanglement between the federal and state court systems." *Ayote v. Am. Econ. Ins. Co.*, CV-09-57-BU-RFC-CSO, 2010 WL 768753, at *6 (D. Mont. Mar. 5, 2010).

This action presents a controversy over the number of occurrences alleged in the Underlying Litigation. Rainbow Ranch and Nelson argue that the declaratory action will not settle all aspects of the controversy because a jury in the Underlying Litigation could find that none of the alleged acts occurred thereby resulting in no occurrences. Western National already has tendered what it believes to be full policy limits of $6,020,000. Western National seeks a declaration as to whether its policy limits have been exhausted in satisfaction of its duties under the UTPA. The Court's determination on the number of occurrences alleged will settle the controversy as to whether policy limits have been exhausted.

This action will not result in entanglement between the federal and state systems. The Underlying Litigation relates to the parties' liability and the damages suffered by Hudgens as a result. The declaratory judgment action relates to whether Western National has exhausted its policy limits such that no duties remain outstanding under the UTPA. This action concerns a separate and distinct issue that can be resolved apart from the Underlying Litigation. Accordingly, the Court will exercise jurisdiction over this matter.

### c. Whether the Court should stay the declaratory judgment action pending the resolution of the Underlying Litigation

Rainbow Ranch and Nelson also argue that the Court should exercise its inherent power to stay this action. "Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). The Court must weigh the following:

> the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Id.* at 268 (citing *Landis*, 299 U.S. at 254–55). The *Landis* factors do not weigh in favor of a stay. Western National will suffer harm if the proceedings are stayed. Western National will remain uncertain whether it has exhausted its policy limits. Moreover, Western National's settlement obligations under *High Country Paving* and the UTPA will remain unknown and uncertain without a declaration as to the number of occurrences.

Rainbow Ranch argues that it and Nelson will suffer hardship and inequity in two ways. Rainbow Ranch argues that it suffers in having to litigate over a duty that may never arise. Western National already has begun fulfilling its duty to indemnify. Western National has paid the amount it believes represents policy limits. Western National seeks a determination as to whether additional coverage remains to be

exhausted. Rainbow Ranch further argues that it suffers hardship in having to argue for multiple occurrences in this action while denying responsibility in the Underlying Litigation. Western National asks this Court to determine whether the allegations in the Underlying Litigation constitute more than one occurrence. Rainbow Ranch need not admit that any of the acts occurred to argue that the allegations of the Underlying Litigation implicate more than one occurrence.

Rainbow Ranch lastly contends that a stay would promote the orderly course of justice because resolution of the Underlying Litigation would provide a foundation for resolving the coverage issues. The jury in the Underlying Litigation will not issue a verdict on whether each alleged act occurred. The jury will issue a verdict on the liability of the parties and any amount of damages. The Court still will have to construe the definition of occurrence and determine whether the alleged acts constitute more than one occurrence. The Court denies Rainbow Ranch's and Nelson's motion to stay this action.

**II. Whether the Underlying Litigation alleges multiple occurrences or a single occurrence.**

The Montana Supreme Court has adopted the "'cause' theory for interpreting the term 'occurrence' in an insurance liability policy that limits the insurer's liability to a specified amount per 'occurrence.'" *Heggem v. Capitol Indem. Corp.*, 154 P.3d 1189, 1195 (Mont. 2007). The "cause theory" approach determines the number of

occurrences by looking to the cause or causes of the damage or injury rather than the number of injuries or claims. *Id.* at 1195.

A daycare provider in *Heggem* administered a lethal dose of Benadryl to a child. 154 P.3d at 1191. The child's parents sued the provider's insurer for bad faith after the insurer offered the policy limits for one occurrence. *Id.* The child's parents argued that they were entitled to coverage for multiple occurrences. *Id.* at 1195. The child's parents argued that several "occurrences" transpired including the lethal dose of Benadryl, prior administrations of Benadryl to the child, the failure of the daycare provider's partner in preventing the lethal administration of Benadryl, and emotional distress. *Id.* at 1195–96. The Montana Supreme Court noted that "the emotional distress claims are effects, not causes." *Id.* at 1197. The Montana Supreme Court further emphasized that courts view bad faith from the time the insurer takes the disputed action. *Id.* at 1195–96. The Montana Supreme Court determined that the parents had alleged the lethal dose of Benadryl as the only cause of the damages. This lethal dose represented the sole cause of harm when the insurer offered the one-occurrence policy limit. *Id.*

The Montana Supreme Court applied the "cause theory" in *National Indem. Co. v. State* and determined that more than one occurrence existed. 499 P.3d 516, 541–42 (Mont. 2021). Miners who had worked in Libby, Montana sued the state for asbestos exposure. *Id.* at 521–22. Montana knew about the presence of asbestos in

the mines as early as 1956, but Montana repeatedly chose not to warn the miners. *Id.* at 521–22. The Montana Supreme Court rejected the insurer's argument that the state's decision to follow the attorney general's recommendation not to warn miners caused the failure to warn and the resulting exposure. *Id.* at 542. The Montana Supreme Court determined instead that "the State's multiple decisions over the course of more than a decade to withhold certain information caused the claimants' injuries." *Id.* at 542.

Other courts have addressed the number of occurrences involved in carbon monoxide poisonings. In *Scottsdale Ins. Co. v. Robertson*, multiple tenants of an apartment building suffered carbon monoxide poisoning. 788 N.E.2d 279, 280 (App. Ct. Ill. 2003). The insurer sought a declaration that the poisonings constituted only one occurrence. *Id.* The insurer defined occurrence in the same manner that Western National's policy defines occurrence: occurrence means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 282; *see* Doc. 1-2 at 32. The injured parties argued that multiple people suffering injuries meant multiple occurrences. *Scottsdale Ins. Co.*, 788 N.E.2d at 284. The court determined that the injuries all stemmed from one cause, leaking carbon monoxide, and constituted only one occurrence. *Id.* at 282–85.

A hotel alleged several occurrences in *Century Sur. Co. v. Casino West, Inc.* where some of its patrons had died from carbon monoxide poisoning. 99 F.Supp.3d

14

1262, 1263–64 (D. Nev. 2015). The insurance policy again defined occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 1264. The hotel identified multiple causes that led to carbon monoxide build up including a faulty heater, improper roof height, and alteration of the control panel. *Id.* at 1263. The district court found that the case "present[ed] one common cause of the victims' deaths—carbon monoxide poisoning. The fact that the fatal conditions in this case were the result of more than one contributing cause does not undermine that conclusion." *Id.* at 1266.

Western National acknowledges that Hudgens's complaint in the Underlying Litigation alleges several negligent acts including failing to warn, failing to maintain, and failing to check on her and her husband. Western National contends, however, that these acts all contributed to the build-up of carbon monoxide, which constituted the sole cause for Hudgens's injuries and the death of Hudgens's husband. This situation mirrors the facts in *Casino West, Inc.* where multiple causes led to carbon monoxide building up. *Casino West, Inc.*, 99 F.Supp.3d at 1263.

Western National's policy defines occurrence the same way as the policies in *Casino West, Inc.* and *Scottsdale Ins. Co.*, including "continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 1-2 at 32.) The Underlying Litigation alleges faulty installation of the spa boiler, faulty maintenance of the boiler, and faulty construction of the room in which Hudgens

15

stayed. The Underlying Litigation also alleges that Rainbow Ranch failed to check on Hudgens and her husband when asked by concerned family members. These negligent acts allegedly led to a build-up of carbon monoxide. Hudgens's bodily injuries and her husband's death stem from one cause, carbon monoxide poisoning. *See Casino West*, 99 F.Supp.3d at 1266. "[T]hat the fatal conditions in this case were the result of more than one contributing cause does not undermine that conclusion." *Id.* The Underlying Litigation alleges only one occurrence.

### III. Whether Western National's Motion is Moot As it Pertains to Hudgens's Counterclaim

Western National's motion proves moot as it pertains to Hudgens's counterclaims. Hudgens asserted counterclaims in her first answer to the complaint. (Doc. 3 at 8–17.) Hudgens filed an amended answer that failed to include those counterclaims. Hudgens implicitly withdrew her counterclaims by filing an amended answer without realleging those claims. (Doc. 27 at 2–3.)

## CONCLUSION

The Court will grant Western National's Motion for Judgment on the Pleadings that there exists only one occurrence. This case presents a justiciable controversy. Staying the case or refusing to exercise jurisdiction over the case does not prove appropriate. Accordingly, the Court will deny Rainbow Ranch's Cross Motion to Dismiss or for a Stay, or alternatively, Cross Motion for Judgment on the Pleadings. The Court finds that the Underlying Litigation alleges one occurrence.

## ORDER

Accordingly, **IT IS ORDERED** that:

1. Western National's Motion for Judgment on the Pleadings (Doc. 22) is **MOOT** as it pertains to Hudgens's withdrawn counterclaim.

2. Western National's Motion for Judgment on the Pleadings (Doc. 22) is **GRANTED** to the extent it seeks a declaratory judgment that the Underlying Litigation against its insureds alleges only one occurrence.

3. Rainbow Ranch's Cross Motion to Dismiss or for a Stay, or alternatively, Cross Motion for Judgment on the Pleadings (Doc. 28) is **DENIED**.

Dated this 17th day of November, 2023.

_____
Brian Morris, Chief District Judge
United States District Court